UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Chapter 7

Remi Leonard Slabbinck and                      Case No. 12-48448
Susan Loucille Slabbinck,
                                                Hon. Phillip J. Shefferly
        Debtors.
_____/

**OPINION REGARDING UNITED STATES TRUSTEE'S MOTION
FOR RELIEF UNDER SECTION 329 OF THE BANKRUPTCY CODE**

## Introduction

This opinion deals with a motion filed by the United States Trustee ("UST") under § 329 of

the Bankruptcy Code, seeking cancellation of an agreement to pay a fee to a Chapter 7 debtor's

attorney and disgorgement of a fee paid to that attorney. This is a core proceeding under 28 U.S.C.

§ 157(b)(2)(A), over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

## Facts

The following facts are not in dispute.

On April 2, 2012, the Debtors filed this Chapter 7 case. Prior to filing the petition, the

Debtors met with and hired the B.O.C. Law Group, P.C. ("BOC"). BOC is a law firm that

specializes in representing individual debtors in bankruptcy cases. The Debtors signed two separate

agreements with BOC. The first agreement is titled "Chapter 7 Fee Agreement" ("Pre-Petition

Agreement") (docket entry no. 23, Ex. 1). The second agreement is titled "Post-Petition Chapter 7

Fee Agreement" ("Post-Petition Agreement") (docket entry no. 23, Ex. 2).

The Debtors signed the Pre-Petition Agreement on March 1, 2012. The Pre-Petition

Agreement states that the Debtors agree to employ BOC "TO REPRESENT CLIENT(S) IN FILING

A VOLUNTARY CHAPTER 7 BANKRUPTCY PETITION." The Pre-Petition Agreement then describes the pre-petition services that BOC agrees to provide to the Debtors, including "CONSULTATION AND ADVICE" and preparation of the bankruptcy petition and certain other documents necessary for the filing of a bankruptcy case. The Pre-Petition Agreement states that the fee for these pre-petition services is $1,000.00. The Pre-Petition Agreement contains a separate paragraph informing the Debtors that BOC will not represent the Debtors once the bankruptcy case is filed, unless a new agreement is signed.

> CLIENT EXPRESSLY UNDERSTANDS THAT [BOC] WILL NOT REPRESENT CLIENT AFTER FILING THE BANKRUPTCY PETITION UNLESS A SEPARATE POST-PETITION FEE AGREEMENT IS SIGNED. CLIENT WILL BE PROVIDED WITH A COPY OF THE SAME AND CLIENT ACKNOWLEDGES HIS/HER/THEIR INTENTIONS TO EMPLOY [BOC] FOR POST-PETITION COMPLETION OF THE CHAPTER 7 BANKRUPTCY FOR A FEE OF $2000.00.

According to the Debtors' affidavit (docket entry no. 23, Ex. 3), the Debtors "understood" that the $1,000.00 that they paid under the Pre-Petition Agreement was for services rendered to them by BOC prior to filing their bankruptcy case. They "further understood" that they would be "required to retain legal counsel subsequent to the filing of their Bankruptcy Petition to receive legal services for any necessary work required post-petition." The Debtors state in their affidavit that they paid BOC $1,000.00 on March 16, 2012, satisfying in full their obligation under the Pre-Petition Agreement. The Debtors go on to explain in their affidavit that "although they were in no way obligated to do so, Debtors knowingly and voluntarily decided to retain B.O.C. Law Group, P.C. to perform all necessary post-petition services on behalf of the Debtors."

After filing their Chapter 7 petition on April 2, 2012, the Debtors met again with BOC and signed the Post-Petition Agreement on April 4, 2012. The Post-Petition Agreement states that the Debtors agree to employ BOC "to represent [them] in completing a Chapter 7 Bankruptcy, Case

number: 12-48448-PJS." The Post-Petition Agreement then describes the post-petition services that BOC agrees to provide to the Debtors in connection with the completion of their bankruptcy case, including the preparation and filing of schedules, statement of financial affairs and other documents, and attendance at the § 341 meeting of creditors. The Post-Petition Agreement states that the fee for these post-petition services is $2,000.00, to be paid at the rate of $166.67 per month beginning on April 13, 2012. In their affidavit, the Debtors state that they "knowingly and voluntarily executed" the Post-Petition Agreement, they are satisfied with BOC's representation of them in their bankruptcy case, and they "wish to continue paying" BOC for services rendered to them post-petition under the Post-Petition Agreement.

On April 16, 2012, BOC filed a Fed. R. Bankr. P. 2016(b) statement (docket entry no. 13). The Rule 2016(b) statement describes the "compensation paid or agreed to be paid" by the Debtors as follows:

**[ X ]  FLAT FEES - SEE FEE AGREEMENTS**

A.      For legal services rendered in contemplation of and in connection with this case, exclusive of the filing fee paid for services:

| | |
|---|---|
| Pre-Petition | $1,000.00 |
| Post-Petition | $2,000.00 |
| Total | $3,000.00 |

B.      Prior to filing this statement, received . . . . . . . . . . . . . . . . . $1,000.00

C.      The unpaid balance due and payable is . . . . . . . . . . . . . . . $2,000.00

On June 7, 2012, the UST filed a motion (docket entry no. 21) seeking an order requiring BOC to disgorge any amounts paid by the Debtors under either the Pre-Petition Agreement or Post-Petition Agreement. On June 28, 2012, BOC filed a response (docket entry no. 23) accompanied by the Debtors' affidavit, and then filed a brief (docket entry no. 29) on July 17, 2012.

The Court held a hearing on August 9, 2012. At the hearing, BOC provided the Court and the UST with a copy of its Itemized Record of Services. The Itemized Record of Services shows that BOC provided seven hours of pre-petition services, totaling $1,237.50, the fee for which was reduced to $1,000.00 pursuant to the Pre-Petition Agreement. It further shows that BOC provided 10.7 hours of post-petition services, totaling $2,062.50, the fee for which was reduced to $2,000.00 pursuant to the Post-Petition Agreement.

### Positions of the UST and BOC

The UST's motion is brought under § 329 of the Bankruptcy Code. Section 329(a) requires that any attorney representing a debtor in a bankruptcy case must

> file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

Section 329(b) provides that if the compensation paid or agreed to be paid "exceeds the reasonable value" of the services rendered or to be rendered, "the court may cancel any such agreement, or order the return of any such payment, to the extent excessive[.]"

The UST makes two basic arguments in support of its request for relief under § 329. First, the UST argues that the Pre-Petition Agreement and the Post-Petition Agreement in substance constitute one agreement between the Debtors and BOC for BOC to represent the Debtors in their Chapter 7 case. According to the UST, taken together, these agreements create a pre-petition debt that is dischargeable in the Debtors' Chapter 7 case under controlling precedent in the Sixth Circuit, Rittenhouse v. Eisen, 404 F.3d 395, 396 (6th Cir. 2005). In the UST's view, the creation of two separate documents, the Pre-Petition Agreement and the Post-Petition Agreement, is a fiction intended as a "workaround" of the holding of Rittenhouse. Second, the UST argues that, if the Court treats the Pre-Petition Agreement and Post-Petition Agreement separately, then the Court should still

-4-

grant the UST's motion because BOC's breaking up of the services that it agreed to render to the Debtors between pre-petition services and post-petition services is an impermissible "unbundling" of the legal services essential to the representation of a debtor in a Chapter 7 bankruptcy case.

BOC concedes that <u>Rittenhouse</u> holds that a pre-petition agreement to pay attorney fees is not one of the exceptions to a Chapter 7 discharge under § 523 of the Bankruptcy Code. But BOC argues that <u>Rittenhouse</u> does not apply to a post-petition agreement to pay attorney fees, and that the Post-Petition Agreement in this case is unaffected by <u>Rittenhouse</u>. BOC further argues that there is nothing in the law prohibiting it from unbundling the legal services that it renders to an individual pre-petition, and being compensated for those services pre-petition, from the legal services that it renders to such individual post-petition, and being compensated for those services post-petition under a post-petition agreement for payment.

## <u>Dischargeability of attorney fees</u>

In <u>In re Gourlay</u>, no. 12-46096, __ B.R. __, 2012 WL 4791034 (Bankr. E.D. Mich. Oct. 9, 2012), the Court recently applied <u>Rittenhouse</u> to a UST motion under § 329. In that case, there was only one fee agreement between the individual debtor and the debtor's attorney, and it was signed pre-petition. The fee agreement in that case provided for a $1,000.00 flat fee for the debtor to file a Chapter 7 bankruptcy case and for the attorney to represent the debtor in such case. The Rule 2016(b) statement indicated that the fee agreement called for the debtor to make a down payment of $100.00 pre-petition, and then pay the balance of the flat fee of $900.00 in post-petition installment payments. <u>Id.</u> at *1. In <u>Gourlay,</u> the Court held that the pre-petition agreement of the debtor to pay $900.00 of the flat fee post-petition was a pre-petition dischargeable debt that the attorney could not enforce. <u>Id.</u> at *3. As a result, the Court granted the UST's motion under § 329

cancelling the debtor's agreement to make post-petition installment payments. In reaching its holding, the Court in <u>Gourlay</u> quoted the following passage from <u>Rittenhouse</u>:

> "The issue of whether pre-petition attorney fees are dischargeable in bankruptcy is *res nova* in this circuit. We join three other circuits in concluding that pre-petition attorney fees are dischargeable, and we affirm the order of the district court.
>
> "11 U.S.C. § 727(b) provides that a discharge under Chapter 7 relieves a debtor of all debts incurred prior to the filing of a petition for bankruptcy, except those nineteen categories of debts specifically enumerated in 11 U.S.C. § 523(a). A debt for pre-petition legal services is not one of the non-dischargeable debts enumerated in § 523(a)."

<u>Id.</u> at *3 (quoting <u>Rittenhouse</u>, 404 F.3d at 396 (citing <u>In re Fickling</u>, 361 F.3d 172 (2nd Cir. 2004); <u>Bethea v. Robert J. Adams & Associates</u>, 352 F.3d 1125 (7th Cir. 2003); and <u>In re Biggar</u>, 110 F.3d 685 (9th Cir. 1997))).

The facts in this case are different. Unlike <u>Gourlay</u>, this case involves two separate agreements, one of which the Debtors signed before their bankruptcy case was filed, and the other of which the Debtors signed after their bankruptcy case was filed. It is undisputed that the Debtors paid BOC the entire $1,000.00 required by the Pre-Petition Agreement prior to the time that they filed their bankruptcy case. There is no debt for unpaid pre-petition fees that would be subject to the discharge. It is only the Debtors' obligation to make post-petition payments under the Post-Petition Agreement that is at issue in this case.

This factual distinction is important because the <u>Rittenhouse</u> holding is predicated on the discharge of pre-petition debts that a Chapter 7 debtor receives under § 727 of the Bankruptcy Code and the specific exceptions to discharge enumerated in § 523(a). <u>Rittenhouse</u> did not rule on the enforceability of an obligation to pay attorney fees under an agreement made *after* a bankruptcy case is filed. The only reference in <u>Rittenhouse</u> to a post-petition agreement to pay attorney fees is the court's observation that "§ 329 covers also post-petition attorney fees, which are not dischargeable."

-6-

404 F.3d at 397. Moreover, in support of its holding that there is no exception to discharge for a pre-petition agreement to pay attorney fees, <u>Rittenhouse</u> expressly relied upon <u>Bethea v. Robert J. Adams & Associates</u>, 352 F.3d 1125 (7th Cir. 2003). In <u>Bethea</u>, the Seventh Circuit Court of Appeals held that a pre-petition agreement to pay attorney fees is dischargeable, but distinguished a pre-petition agreement from a post-petition agreement, and noted that a post-petition agreement to pay attorney fees is not dischargeable.

> For what it may be worth, however, we do not share the view that taking § 727(b) at face value necessarily injures deserving debtors. Those who cannot prepay in full can tender a smaller retainer for prepetition work and later hire and pay counsel once the proceeding begins-for a lawyer's aid is helpful in prosecuting the case as well as in filing it.

<u>Id.</u> at 1128; <u>see also</u> <u>In re Lawson</u>, 437 B.R. 609, 664 (Bankr. E.D. Tenn. 2010) (suggesting that a retainer agreement that "'expressly designat[es] pre-petition services, which are paid pre-petition, and post-petition services, which shall be paid post-petition'" is one "potentially allowable method" for payment of Chapter 7 debtor's attorney fees) (quoting <u>In re Waldo</u>, 417 B.R. 854, 895 (Bankr. E.D. Tenn. 2009)).

The UST does not quarrel with <u>Bethea</u>'s and <u>Rittenhouse</u>'s distinction between a pre-petition agreement to pay attorney fees and a post-petition agreement to pay attorney fees. Instead, the UST asserts that the two agreements signed by the Debtors in this case are in substance a single agreement, one that is entirely pre-petition in nature. The UST argues that the Pre-Petition Agreement was a contract to enter into the Post-Petition Agreement, making it all a pre-petition agreement.

As noted, the Debtors signed the Pre-Petition Agreement on March 1, 2012, before their bankruptcy case was filed. It describes the services that BOC would perform pre-petition up to the filing of the case. It contains an explicit statement that BOC will not represent the Debtors once the

bankruptcy case is filed "unless a separate post-petition fee agreement is signed." The Pre-Petition Agreement contains a statement by the Debtors acknowledging "their intention to employ [BOC] for post-petition completion" of their Chapter 7 bankruptcy case, but it does not either state or imply that the Debtors have any obligation to sign a post-petition agreement to hire BOC to represent them after their petition is filed. Further, the Pre-Petition Agreement expressly states that BOC does not have an obligation to represent the Debtors post-petition, and will not do so unless the Debtors sign a separate agreement after the bankruptcy case is filed. In their affidavit, the Debtors state "[t]hat although they were in no way obligated to do so, Debtors knowingly and voluntarily decided to retain" BOC after their bankruptcy petition was filed, and that they "knowingly and voluntarily" entered the Post-Petition Agreement with BOC on April 4, 2012, after their bankruptcy petition was filed.

The UST's assertion that the Pre-Petition Agreement and the Post-Petition Agreement are essentially a single, pre-petition agreement giving rise to an entirely pre-petition debt, is not borne out by the facts. The two separate agreements clearly delineate the services that will be rendered pre-petition from the services that will be rendered post-petition, and clearly delineate the amount that the Debtors agreed to pay to BOC for its pre-petition services and the amount that they agreed to pay for its post-petition services. BOC's Itemized Record of Services shows that its pre-petition services and post-petition services were performed according to the terms of the respective agreements, and the fees for those services were likewise charged in accordance with the terms of the respective agreements. The Debtors' uncontroverted affidavit shows that the Debtors knew when they filed their bankruptcy petition that they did not have to hire BOC to represent them to complete their bankruptcy case. Their affidavit further shows that their decision to hire BOC to perform the services necessary to complete their Chapter 7 case was a voluntary choice that they

made and acted upon after their bankruptcy case was filed. There is nothing in either of the two agreements or the Debtor's affidavit that supports a finding that the Debtors were somehow obligated or coerced to sign the Post-Petition Agreement or that supports the UST's assertion that the separateness of the two agreements is a "fiction." The Debtors' obligation to pay BOC under the Post-Petition Agreement was incurred post-petition. As such, it is not governed by Rittenhouse and is not a dischargeable pre-petition debt under § 727(b) of the Bankruptcy Code. Because the undisputed facts do not support the UST's contention that the Pre-Petition Agreement and the Post-Petition Agreement constitute a single, pre-petition agreement creating an entirely pre-petition debt, the Court rejects the UST's first argument.

### Unbundling of pre-petition and post-petition legal services

The UST's second argument is tougher. Here, the UST argues that it was improper for BOC to unbundle the legal services that it would perform for the Debtors into pre-petition services and post-petition services. In support, the UST does not cite to any section of the Bankruptcy Code or decision of the Supreme Court or the Sixth Circuit Court of Appeals that controls or directly addresses the question of whether an attorney may unbundle the legal services for an individual Chapter 7 debtor into pre-petition services and post-petition services.[1] Instead, the UST relies upon

---

[1] Although § 329 of the Bankruptcy Code authorizes a bankruptcy court to scrutinize the reasonableness of an attorney fee, it does not identify required services that an attorney for a Chapter 7 debtor must always perform.

In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), adding §§ 526-528 to the Bankruptcy Code, "to correct perceived abuses of the bankruptcy system. Among the reform measures [BAPCPA] implemented are a number of provisions that regulate the conduct of 'debt relief agenc[ies]'—i.e., professionals who provide bankruptcy assistance to consumer debtors." Milavetz, Gallop & Milavetz, P.A. v. United States, __ U.S. __, 130 S. Ct. 1324, 1329 (2010) (citing 11 U.S.C. §§ 101(3), (12A)). The purpose of these provisions was "to improve bankruptcy law and practice." Id. at 1330. These provisions introduced a new term to the Bankruptcy Code, "debt relief agency," in § 101(12A). Milavetz held that an attorney who provides bankruptcy assistance to an assisted person is a debt relief agency within the meaning of BAPCPA. Id. at 1333. Neither the UST nor BOC cite to or

In re Egwim, 291 B.R. 559 (Bankr. N.D. Ga. 2003). In Egwim, a Chapter 7 debtor's attorney filed a Rule 2016(b) statement indicating that the agreed upon fee was "'$475 for representation of the [d]ebtors in the case, of which $240 had been paid prior to the filing of the statement, leaving a balance of $235 to be paid 'prior to or at the 341 hearing.'" Id. at 564. The Rule 2016(b) statement recited that the attorney "agreed to render legal service for all aspects of the bankruptcy case," and then went on to describe certain of the tasks that were included, but expressly stated that the agreed upon fee did not include representation of a debtor in "adversary and/or contested matters." Id. at 564-65 (emphasis omitted). A creditor brought an adversary proceeding objecting to discharge. Another creditor filed a motion for relief from stay. The debtor's attorney did not represent the debtor either in response to the adversary proceeding or the motion. The court issued an order sua sponte requiring the attorney to show cause why the court should not impose sanctions because of such failure. Id. at 566. The debtor's attorney appeared at the hearing and explained that he believed that the limitation on the services listed in his fee agreement was appropriate, and that sanctions were not warranted.

Ultimately, the Egwim court held that no sanctions or other disciplinary measures were warranted. However, the court took the opportunity to discuss in detail a number of issues regarding the responsibilities of attorneys representing individual debtors in Chapter 7 cases. Specifically, the court considered whether it is *ever* permissible for an attorney to exclude certain services from the attorney's representation of a Chapter 7 debtor even when there is an agreement that limits such representation. The court noted that the two primary objectives for Chapter 7 debtors are to discharge their debts and retain their exempt assets. Id. at 566-67. With those two objectives in

---

rely upon any of these provisions to support in any way their positions on the UST's motion in this case. Therefore, the Court expresses no view about these provisions.

mind, the Egwim court looked to the Georgia Rules of Professional Conduct, because the bankruptcy case was filed in Georgia. Id. at 569-71.

Georgia Rule 1.1 states that "[a] lawyer shall provide competent representation," which the Egwim court interpreted as meaning that the attorney was required "to provide services that are necessary to achieve the basic, fundamental objectives of the representation." Id. at 572. The court concluded that

> [t]he engagement of an attorney to represent a consumer in a bankruptcy case necessarily includes services required to accomplish those objectives. If obstacles arise to the accomplishment of those objectives, such as an objection to discharge, competent representation under Georgia Rule 1.1 requires the lawyer to provide representation essential to the client's pursuit of the purposes of the representation.

Id. at 569-70.

The Egwim court recognized an exception to this obligation where there is "a valid, professionally appropriate contractual limitation on the scope of services between attorney and chapter 7 debtor[.]" Id. at 570. In determining what constitutes a valid and professionally appropriate limitation, the court looked again to Georgia Rules of Professional Conduct, as well as the Restatement (Third) of the Law Governing Lawyers and In re Castorena, 270 B.R. 504 (Bankr. D. Idaho 2001). After reviewing these sources, the Egwim court held that a valid, professionally appropriate contractual limitation on the scope of services has three requirements: (i) "the attorney must consult with the client about the limited representation"; (ii) "the client must provide informed consent" in writing; and (iii) "the limitation must be reasonable in the circumstances or, in the terms of the Georgia Rule, the engagement must not be so limited as to prevent competent representation." Id. at 571.

Despite recognizing that Georgia Rule 1.2(c) allows an attorney to limit the scope of representation, the Egwim court quoted extensively from In re Castorena in questioning whether,

-11-

in the context of representing an individual Chapter 7 debtor, an attorney could ever have a valid,

professionally appropriate contractual limitation.

> "The ability to adequately explain the lay of the bankruptcy landscape, including all its variations, contingencies and permutations, in order to obtain a truly informed consent is suspect."
>
> . . .
>
> "To send a debtor into a bankruptcy *pro se*, on the theory that he has had 'enough' advice and counseling in the document preparation stage to safely represent himself, is except in the extraordinary case so fundamentally unfair so as to amount to misrepresentation."
>
> . . .
>
> "An attorney, in accepting an engagement to represent a debtor in a chapter 7 bankruptcy case, will find it exceedingly difficult to show that he properly contracts away any of the fundamental and core obligations such an engagement necessarily imposes. Proving competent, intelligent, informed and knowing consent of the debtor to waive or limit such services inherent to the engagement will be required. Compliance with [Rules of Professional Conduct 1.1, 1.2 and 1.4] is mandatory, and must be proved."

Id. at 571-72 (emphasis omitted) (quoting Castorena, 270 B.R. at 529-30).

> Egwim then held as follows:

> In summary, the principles and authorities addressed above establish that an attorney representing a chapter 7 debtor ordinarily may not limit the scope of that engagement. Absent compliance with the standards discussed above, an attempt to limit the engagement is a violation of Georgia's Rules of Professional Conduct and subjects counsel to professional discipline. For a limitation on services to be valid, "that limitation must be carefully considered and narrowly crafted, and be the result of educated and informed consent."

Id. at 572 (emphasis omitted) (quoting Castorena, 270 B.R. at 531).

BOC counters that it may bifurcate the services that it offers into pre-petition and post-

petition segments so long as its client has been advised and consents to such arrangement. Like the

UST, BOC does not cite to any section of the Bankruptcy Code or other controlling authority.

Instead, BOC relies upon In re Mansfield, 394 B.R. 783 (Bankr. E.D. Penn. 2008). The fee

agreement between the debtor and the attorney in Mansfield closely resembles the fee agreement

in Gourlay. In Mansfield, the debtor agreed pre-petition to a flat fee of $2,000.00, of which

$1,000.00 was to be paid up front, with the balance to be paid in monthly installments after the debtor filed his Chapter 7 petition. Id. at 784-85. The Mansfield court reached the same conclusion that this Court reached in Gourlay:

> [T]he Court concludes that a debtor's obligation under a fee agreement to pay a fixed or flat fee to his attorney for legal services rendered pre- and postpetition in a Chapter 7 case, regardless of how the fee is scheduled to be paid, is a prepetition debt that is dischargeable under 11 U.S.C. § 727(b).

Id. at 785; Gourlay, 2012 WL 4791034, at *3. Like Gourlay, Mansfield pointed to § "727(b), which discharges a debtor from 'all debts that arose before the date of the order for relief' unless such debt is excepted under § 523 [of the Bankruptcy Code]." Id. at 787 (quoting 11 U.S.C. § 727(b)). Since § 523(a) contains no exceptions for pre-petition attorney fees, the debtor's obligation in Mansfield to pay the post-petition installment payments was held to be a dischargeable debt. Id. at 791.

BOC cites Mansfield not for its unremarkable holding that pre-petition agreements to pay attorney fees are dischargeable, but instead for its extended discussion of post-petition agreements to pay attorney fees. After reaching its holding, the Mansfield court reviewed various cases that have explored the possible ways for a Chapter 7 debtor's attorney to be paid for services in representing a Chapter 7 debtor.[2] Drawing on cases that have focused on the definition of "claim" under § 101(5)(A) of the Bankruptcy Code as a "right to payment," and that have explained that a "right to payment" in the context of legal services does not ordinarily arise until the services are performed, the Mansfield court explained in *dicta* the distinction between an attorney's right to

---

[2] Other cases that have discussed generally the different ways in which attorneys for individual Chapter 7 debtors can be paid include: Bethea, 352 F.3d at 1128-29; Gordon v. Hines (In re Hines), 147 F.3d 1185, 1189-90 (9th Cir. 1998); In re Lawson, 437 B.R. at 664; In re Chandlier, 292 B.R. 583, 588 (Bankr. W.D. Mich. 2003), aff'd Rittenhouse v. Eisen, 404 F.3d 395 (6th Cir. 2005). See also Lois R. Lupica, The Consumer Bankruptcy Fee Study: Final Report, Am. Bankr. Inst. L. Rev., vol. 20, no. 1, 17, 37-39, 105 (West 2012).

payment for legal services performed pre-petition and an attorney's right to payment for legal services performed post-petition.

> It follows that an attorney's right to payment for legal services performed postpetition pursuant to a fee agreement which, in some manner, segregates prepetition fees from postpetition fees (as opposed to flat fee agreement pursuant to which an attorney agrees to perform both prepetition and postpetition services for a lump or fixed sum) arises when the postpetition services are performed. Viewed thusly, a client's debt for postpetition services is a postpetition debt which is not subject to the automatic stay or the Chapter 7 discharge injunction (unless the work is rendered pursuant to a flat fee agreement as discussed above). The key to recovery for postpetition services, therefore, lies in the terms of the attorney's fee agreement. The fee agreement must segregate the fee(s) for prepetition work from the fee(s) for postpetition work. Once again, this distinction is necessary because a fee for prepetition work constitutes a prepetition debt of, or claim against, the estate which is dischargeable, whereas a fee for postpetition work constitutes a postpetition debt of, or claim against, the debtor which is nondischargeable.

> To recapitulate, legal fees which are segregated from prepetition legal fees and incurred for postpetition legal services constitute a postpetition debt and are, therefore, an obligation of the Chapter 7 debtor (as opposed to the estate) which he or she has an obligation to pay out of his or her postpetition earnings or exempt assets.

Id. at 792-93 (citations and footnote omitted).

Neither the UST's citation to Egwim nor BOC's reliance upon Mansfield controls the Court's decision on the UST's motion in this case. But they do provide the Court with two important starting points. First, the court in Egwim based its ruling that unbundling legal services was impermissible in that specific case, on its review and analysis of the state law rules of professional conduct that applied to the lawyer in that case. 291 B.R. at 572. Second, the court in Mansfield based its statement that unbundling of legal services may be permissible by reference to the specific agreement that is made between the client and the lawyer in a given case: "The key to recovery for postpetition services [ ] lies in the terms of the attorney's fee agreement." 394 B.R. at 793. Consistent with both Egwim and Mansfield, to resolve the UST's motion in this case, the Court

must examine both the rules of professional conduct that govern BOC in this case and the terms of the two agreements made by the Debtors and BOC in this case.

BOC filed the Debtors' bankruptcy case in the Eastern District of Michigan. "Ethical rules involving attorneys practicing in the federal courts are ultimately questions of federal law. The federal courts, however, are entitled to look to the state rules of professional conduct for guidance." El Camino Res. Ltd. v. Huntington Nat'l Bank, 623 F. Supp. 2d 863, 876 (W.D. Mich. 2007) (citing In re Snyder, 472 U.S. 634, 645 n.6 (1985) and Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Alticor, Inc., 466 F.3d 456, 457-58 (6th Cir. 2006), vacated in part on other grounds, 472 F.3d 436 (6th Cir. 2007)). The U.S. District Court for the Eastern District of Michigan has determined that "[t]he Rules of Professional Conduct adopted by the Michigan Supreme Court . . . apply to members of the bar of this court and attorneys who practice in this court as permitted by LR 83.20." Local R. 83.22(b) (E.D. Mich.). Local R. Bankr. P. 9010-1(a)(1) provides that an "appearance before the court on behalf of a person or entity may be made only by an attorney admitted to the bar of, or permitted to practice before, the United States District Court for the Eastern District of Michigan, under E.D. Mich. LR 83.20." The Michigan Rules of Professional Conduct ("MRPC") therefore govern BOC's conduct.

There are several MRPC that are relevant here. Rule 1.1 states that "[a] lawyer shall provide competent representation to a client." Rule 1.2(b) addresses the scope of an attorney's representation of a client, and states that "[a] lawyer may limit the objectives of the representation if the client consents after consultation." The Official Comment to this rule contains an additional explanation of the rule, but also cautions that any agreement regarding the scope of representation must not permit the attorney to violate the obligation to provide competent representation contained in Rule 1.1:

The objectives or scope of services provided by a lawyer may be limited by agreement with the client or by the terms under which the lawyer's services are made available to the client. . . .

An agreement concerning the scope of representation must accord with the Rules of Professional Conduct and other law. Thus, the client may not be asked to agree to representation so limited in scope as to violate Rule 1.1 . . . .

Rule 1.4(b) imposes a duty upon an attorney regarding communications with a client by stating that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." The Official Comment to Rule 1.0 also defines "consult" or "consultation" as "denot[ing] communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question."

Rule 1.5 governs attorney fees and sets forth certain requirements for attorney fee agreements. Rule 1.5(b) states that "[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation." The Official Comment to this rule makes it clear that an attorney has a duty to explain to a client any limitation upon services to be provided that is set forth in a fee agreement. The Official Comment goes on to recognize that a fee agreement may properly limit the services to be rendered, provided that such limitation is both explained and does not improperly curtail services in a way contrary to the client's interest:

An agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client's interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to define the extent of services in light of the client's ability to pay.

Without question, the MRPC and the Official Comments allow an attorney and a client to take into consideration the client's ability to pay and to agree to limit the scope of representation.

-16-

But such agreement may only be made where it does not require the attorney to violate the attorney's duty of competence and where the agreement to limit the scope of representation has been fully explained by the attorney to the client to the extent reasonably necessary to permit the client to make an informed decision regarding such limitation. As noted in the Official Comment to Rule 1.5, an attorney should not enter into an agreement with a client to limit the scope of representation up to a stated dollar amount when it is foreseeable that more extensive services will likely be required "unless the situation is adequately explained to the client."

There are two ethics opinions issued by the State Bar of Michigan Standing Committee on Professional and Judicial Ethics that discuss the application of the MRPC in Chapter 7 bankruptcy cases. In Michigan Ethics Opinion RI-184, 1994 WL 27231 (Jan. 19, 1994), the Committee addressed the question of whether a retainer agreement between an attorney and an individual Chapter 7 debtor may permissibly limit the scope of representation to exclude representation of such debtor in a later adversary proceeding. The Committee stated that, when read together, Rules 1.2(b), 1.4(b) and 1.5(b)

> lead to the conclusion that if the lawyer intended to exclude representation of the debtor in bankruptcy adversary proceedings, the lawyer should have so specified and given the client the opportunity to seek counsel who may offer representation on other terms. It is not the client's responsibility to know, without it being explained, that adversary proceedings may occur and the consequences arising from them. Therefore, if a retainer agreement is silent or ambiguous on the subject of representing a debtor client in bankruptcy adversary proceedings, the lawyer would be required to provide that representation.

More recently, Michigan Ethics Opinion RI-348, 2010 WL 3011700 (July 26, 2010) addressed the question of whether an attorney for an individual Chapter 7 debtor may exclude representation with respect to a reaffirmation agreement.[3] In that opinion, the Committee reviewed

_____

[3] On December 16, 2009, the Bankruptcy Court for the Eastern District of Michigan entered Administrative Order No. 09-32, adopting Guideline 13, which states that an attorney for

the applicable MRPC, drew on its analysis from Opinion RI-184, and emphasized that any limitation

on representation is only permissible if it is adequately explained to the client and the client consents

to such limitation after "adequate consultation." The adequate consultation must, "at a minimum,"

include information on "the risks to the client that the proposed limitations would create," as well

as the "technical aspects," "legal ramifications" and "material risks" of reaffirming a dischargeable

debt. The opinion concluded

> that the limitation excluding representation as to reaffirmation, if permissible under
> applicable law, which may vary among jurisdictions, would not of itself result in a
> violation of Rule 1.1 and is permitted under Rule 1.2(b). In seeking to so limit the
> scope of the representation, the lawyer will need to obtain the client's consent after
> consultation, and in connection with obtaining consent, must explain the material
> risks of reaffirmation and available alternatives, as required by Rule 1.4.

After reviewing the authorities cited by the UST and BOC, as well as the MRPC, the Official

Comments to the MRPC, and Michigan Ethics Opinions RI-184 and RI-348, the Court is persuaded

that an agreement to limit an attorney's legal services in connection with an individual Chapter 7

bankruptcy case by unbundling the pre-petition legal services from the post-petition legal services,

is not per se prohibited by the MRPC and does not necessarily warrant any relief under § 329 of the

Bankruptcy Code. That does not mean that all agreements to unbundle legal services are

permissible, but only that such agreements are not always barred. Although § 329 of the Bankruptcy

Code does not set forth specific criteria governing the unbundling of legal services in a Chapter 7

---

a debtor in a Chapter 7 case may not exclude from representation services relating to a
reaffirmation agreement. Although not cited by either the UST or BOC, the Bankruptcy
Court adopted Guideline 13 pursuant to its power to regulate the practice of law in the Bankruptcy
Court, setting forth a specific standard of practice regarding a specific issue. There are three
relevant points about this Guideline. First, it was not a ruling based upon a request for relief
under § 329 in a specific case. Second, it was issued by the entire Bankruptcy Court after the
Bankruptcy Court solicited, received and considered input from the Consumer Bankruptcy
Association. Third, it provides an example of the MRPC being the floor, but not necessarily the
ceiling, of professional conduct that the Court seeks to encourage.

case, it is clear that, minimally, the MRPC require that (1) the attorney competently represents the individual debtor despite any limitation on the scope of services; (2) the attorney provides adequate consultation to the individual debtor concerning any limitation on the scope of the attorney's representation and the legal matter in question; and (3) the individual debtor makes a fully informed and voluntary decision to consent to such limitation.

### Did BOC's separation of pre-petition and post-petition legal services in this case comply with the MRPC?

The remaining issue then is whether the specific unbundling of BOC's legal services in the Pre-Petition Agreement and the Post-Petition Agreement in this case complies with the MRPC. The first question is whether BOC's limitation on its pre-petition services prevented it from acting competently.

### The attorney's competence

Although "competence" is not defined in the MRPC, the Official Comment to Rule 1.1 provides relevant factors in determining whether a lawyer is able to provide competent representation, such as the lawyer's training, experience, preparation for and study of a matter, and the ability to "determin[e] what kind of legal problems a situation may involve." The level of competency heightens as the complexity and specialized nature of the matter increase. These factors relate primarily to the particular attorney rendering a legal service rather than a description of the service itself. But the UST in this case does not suggest that BOC is not competent because it lacks the requisite skill, experience and ability to represent the Debtors. Instead, the UST's argument in this case targets whether the unbundling of legal services between services that are performed pre-petition or post-petition necessarily precludes a finding of competence where the attorney is representing an individual Chapter 7 debtor.

-19-

In contrast to the factors identified in the Official Comment to the MRPC, which focus on the attributes of the attorney, such as training, experience, preparation and ability, Egwim defined competency in another way. Egwim defined competency of an attorney in an individual Chapter 7 case by reference to what Egwim described as the two primary objectives of such individual: obtaining a discharge and retaining exempt property.

> Competent representation of a chapter 7 debtor requires that the attorney represent the debtor in all matters in the case that are necessary to the pursuit of the client's primary objectives, including the receipt of a discharge of debts and retention of exempt property. Representation to pursue those goals necessarily involves the provision of services to the debtor in adversary proceedings and contested matters that affect the debtor's interests. The scope of that representation ordinarily cannot be limited.

Egwim, 291 B.R. at 579.

Under Egwim, competency demands that an attorney for an individual Chapter 7 debtor must perform *all* of the legal services needed for that individual to obtain a discharge and retain their exempt property, whether those legal services are performed pre-petition or post-petition. A definition of competence that mandates that the attorney perform all of the legal services in a Chapter 7 case intuitively has great appeal to the Court. But is it legally correct to say that an attorney for a Chapter 7 individual debtor who performs only some legal services but not others is acting incompetently? To answer this question, it helps to understand what exactly an individual debtor must do in a Chapter 7 case.

The Bankruptcy Code and the Federal Rules of Bankruptcy Procedure impose a number of requirements that an individual debtor must fulfill in a Chapter 7 case to achieve the two objectives identified in Egwim. Some of those requirements can be met before the bankruptcy case is filed. Others cannot, and instead must be performed by the debtor after the bankruptcy petition is filed. For example, § 521(a)(1) of the Bankruptcy Code requires a debtor to file various documents. Those

documents can be prepared before the bankruptcy case is filed. However, § 521(a)(3) requires a debtor to cooperate with the trustee. That can only be done after the bankruptcy case is filed. Section 521(a)(4) requires a debtor to surrender property of the estate to the trustee. That too can only be done after a bankruptcy case is filed. Similarly, § 343 requires a debtor to appear and submit to an examination under oath at a meeting of creditors to be held under § 341 within a reasonable time after the order for relief. Obviously, performance of that duty cannot take place until after the bankruptcy case is filed. Section 727 sets forth further requirements that must be met in order for an individual debtor to obtain a discharge. Many of these requirements relate to an individual debtor's conduct and duties after the petition has been filed (e.g., § 727(a)(4), (6) and (11)). Because of the ongoing post-petition duties that the Bankruptcy Code imposes on an individual Chapter 7 debtor, it is not possible for all of the attorney's services to be performed pre-petition in every case (e.g., how can an attorney represent the debtor at the § 341 meeting before the petition is filed?). Aside from the duties that an individual debtor *must* perform only after a petition has been filed, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure also *permit* an individual debtor to perform other duties either at the time of filing the petition or after the petition has been filed. For example, Fed. R. Bankr. P. 1007(c) permits some of the debtor's required documents to be filed 14 days after the petition, and permits still other documents to be filed within a fixed number of days after the § 341 meeting. Further, the rule authorizes extensions of even those deadlines.

Under the Egwim standard of competence (i.e., performing all of the legal services needed by the debtor whether pre-petition or post-petition), those individuals who can afford to pay an attorney in full in advance of filing a bankruptcy petition will be able to have competent counsel represent them throughout the case in connection with all of their duties, both pre-petition and post-petition. But there are many individuals, including the Debtors, who wish to file Chapter 7 but do

not have sufficient funds to pay an attorney in full in advance of filing the petition for all of the legal services that will be necessary for such individuals to perform all of their duties, both pre-petition and post-petition, needed for them to obtain a discharge and protect their exempt property, the two goals defined in Egwim. Under Rittenhouse, it is clear that such individuals in the Sixth Circuit cannot solve that problem by promising pre-petition to pay for any legal services to be performed after the bankruptcy petition is filed because that pre-petition promise is a dischargeable debt. But if the attorney's duty of competence requires that the attorney perform all of the legal services that the debtor will need, both pre-petition and post-petition, then every bankruptcy attorney will understandably demand full payment up front for all of the legal services that may be needed in a Chapter 7 case both pre-petition and post-petition, including defense of adversary proceedings, defense of objections to exemptions and discharge, advice and counseling in connection with the § 341 meeting, and advice and counseling throughout the entire bankruptcy case for the debtor to meet the debtor's duty to cooperate with the trustee.

The combination of the Egwim definition of competence, and the Rittenhouse holding that a pre-petition agreement to pay legal fees is dischargeable, puts the individual who does not have the resources to pay an attorney in full in advance between a rock and a hard place. Without the funds to pay an attorney in full prior to the petition, and without the ability to use post-petition income to pay the attorney, an individual debtor in these circumstances is relegated to having to file pro se or use a bankruptcy petition preparer, which in many cases is worse than pro se. If the law provides that competent representation of a Chapter 7 debtor requires in every case that the debtor's attorney represent the debtor in all matters in the case, both pre-petition and post-petition, many needy debtors will simply not be able to afford an attorney to handle their case. The Court concludes that the law does not so provide.

First, there is no cited provision in either the Bankruptcy Code or the MRPC holding that competent representation of a Chapter 7 debtor requires that the attorney represent the individual debtor in *all* matters necessary to pursue the client's ultimate objectives. It seems obvious that an individual debtor will be best served by having an attorney represent them in all facets of a Chapter 7 case, pre-petition and post-petition, start to finish. But the Court declines to use the UST's motion in this case as the vehicle to impose such a requirement for all Chapter 7 cases.

Second, defining competence by insistence that an attorney perform all of the legal services that may be needed by an individual Chapter 7 debtor intrudes upon the freedom of an individual client to contract with an attorney of their choice to perform specific legal services for them. An individual may well choose to hire one attorney, experienced in filing Chapter 7 bankruptcy cases, to file a Chapter 7 bankruptcy case for such individual, and then choose post-petition to hire a different attorney experienced in litigation, to defend an adversary proceeding under § 523 or § 727, or litigate a contested matter. The law does not prohibit such choice.

Third, defining competence by insistence that an attorney representing the debtor must perform all of the legal services in a Chapter 7 case ignores the span of legal services that is built into Chapter 7 by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. It makes no sense to define competence in a way that pretends that all of the post-petition services a debtor may need, either can or should be performed pre-petition. In most Chapter 7 cases, all of the required documents are filed with the petition. That is certainly optimal in the Court's view, but it is not always the case. There are many cases where an attorney files a bare bones bankruptcy petition quickly, out of necessity, to stay an action by a creditor before there is a sufficient opportunity pre-petition to completely prepare all of the required documents to obtain a Chapter 7 discharge. There are still other cases where, for one reason or another, the attorney does not prepare

and file all of the schedules of assets and liabilities, statement of financial affairs and other required documents until after a bankruptcy petition has been filed. The debtors in many of these cases go on to timely file all of their required documents, attend the § 341 meeting and otherwise fulfill all of the requirements needed to obtain a discharge and retain their exempt property. The Court declines to adopt a definition of competency that necessarily implies that an attorney for a debtor in these circumstances has not acted competently just because some of the attorney's work was done after the petition was filed.

Fourth, if competence were so defined, and thus required all of these overlapping services to *always* be bundled together, many needy individuals would simply be shut out of access to bankruptcy. Defining competence as always meaning all of the pre-petition and post-petition services that an individual Chapter 7 debtor may possibly need, and then insisting that the individual debtor pay for all of these services up front before filing a petition, unnecessarily throws up a financial roadblock for individual debtors seeking access to Chapter 7 relief. If an individual in need of Chapter 7 relief can only afford pre-petition to pay for an attorney to file a bare bones case, and does not want to file a pro se petition, the Court sees no reason why it should deprive that individual of the right to use their pre-petition funds to hire an attorney to file a petition and then decide post-petition whether to use their post-petition income to hire an attorney post-petition to complete their Chapter 7 bankruptcy case. Such individuals are still much better served by being able to at least hire an attorney to file a bankruptcy petition rather than having to file the petition pro se or pay a bankruptcy petition preparer, only to then hire an attorney post-petition to finish their Chapter 7 cases.

Fifth, defining competency of a Chapter 7 debtor's attorney by insistence on the attorney handling all aspects of the Chapter 7 case leads to the anomalous result that competence is a higher

standard for an attorney filing a Chapter 7 case than for an attorney filing a Chapter 13 case. Individuals often file Chapter 13 cases without all of their schedules, statement of financial affairs and other required documents.  In many Chapter 13 cases, these documents are prepared post-petition and the cost for the legal services incurred for the preparation and filing of these documents is paid for by the individual debtor post-petition.  It is hard for the Court to find a principled basis to hold that an attorney who files a bare bones Chapter 7 petition for a pre-petition fee, with the balance of the schedules and other documents to be filed post-petition, is automatically acting less competently than an attorney who files a bare bones Chapter 13 petition for a pre-petition fee, with the balance of the schedules and other documents to be filed post-petition.  The only difference in these two scenarios is that the attorney in the Chapter 13 case has a source of payment (i.e., the debtor's post-petition income) for the post-petition services while the attorney in the Chapter 7 case does not.

The Court disagrees with the Egwim court's definition of competence for an attorney representing an individual debtor in a Chapter 7 bankruptcy case.  The Court agrees that it is critical that an individual who hires an attorney pre-petition be properly advised by that attorney about all of the risks, rewards, rights and responsibilities in a Chapter 7 bankruptcy case before they file a bankruptcy petition.  But it is no less important that they have adequate legal representation during the case until its conclusion.  Competence in providing pre-petition legal services to an individual Chapter 7 debtor is not best construed as requiring an attorney to do *all* of the work that a Chapter 7 bankruptcy may eventually require before the petition is filed.  Competence does not demand that an attorney perform all Chapter 7 legal services pre-petition when the law either permits or requires the debtor to take some actions post-petition, and the debtor needs post-petition legal representation at the very time that the debtor is taking those actions.  Rather, competence of a Chapter 7 debtor's

attorney is most appropriately evaluated by looking at the actual work that was agreed to be performed and then was performed by the attorney, not by looking at the remaining work that will have to be done to complete the case when the individual has not hired the attorney to perform those services and the attorney has not performed those services. An individual debtor's attorney may well meet his or her duty of competence in preparing and filing a bare bones petition with the intention of preparing and filing the balance of the required documents after the petition has been filed. If the bankruptcy petition and the other minimal documents necessary to avoid dismissal are prepared and filed properly by the attorney, in a manner that enables the individual debtor to move forward in such case with a reasonable prospect of completing the case and obtaining a discharge, the Court rejects the proposition that the attorney has automatically failed the duty of competence just because the attorney has not been hired to file and has not filed those documents that the law either requires or permits to be filed post-petition.

In this case, the UST does not allege that there are any facts, other than the fact that BOC unbundled its pre-petition legal services from its post-petition legal services, to show that BOC did not meet its duty of competence in providing pre-petition advice and consultation to the Debtors, and preparing and filing their bankruptcy petition, cover sheet, statement of social security number, and matrix. The UST does not allege, and there is no evidence in the record to indicate, that the documents that BOC did prepare and file with the Debtors' petition were in any way deficient, or left the Debtors in a position where they could not then timely complete their post-petition duties necessary to obtain a discharge and protect their exempt property. In fact, the Debtors' file shows that they obtained a discharge on July 17, 2012 without any objection or delay. Absent any evidence that BOC's pre-petition services were performed in a deficient or untimely manner, the Court finds

that BOC's separation of its legal services in this case between pre-petition services and post-petition services by itself did not breach BOC's duty of competence under the MRPC.

Adequacy of the attorney's consultation

The next question in determining whether BOC has complied with the MRPC in this case is whether BOC provided adequate consultation to the Debtors. Michigan Ethics Opinion RI-348, addressing the unbundling of reaffirmation agreements, states that adequate consultation requires the attorney to explain that the attorney is limiting the scope of representation *and* to explain the technical aspects of reaffirmation agreements, and the legal ramifications, material risks and available alternatives. When an attorney unbundles post-petition services, Michigan Ethics Opinion RI-348 further instructs that adequate consultation means the attorney must explain to the client the limitation of representation, plus what is likely to happen post-petition, including the technical aspects, legal ramifications, material risks and available alternatives.

The Pre-Petition Agreement describes BOC's pre-petition services in detail. It also contains an express statement by the Debtors that they understand that BOC will not represent them after filing the bankruptcy petition "unless a separate post-petition fee agreement is signed," and states that BOC "fully advised" the Debtors of their "bankruptcy options and fully disclosed the fees required to file this case." The Debtors' affidavit also contains statements by the Debtors that are relevant in determining whether BOC fully explained to the Debtors the limitations on the scope of its representation. In paragraph 7 of their affidavit, the Debtors state that they "understood through counsel with B.O.C. . . . that [they] were required to retain legal counsel subsequent to the filing of [their] Bankruptcy Petition to receive legal services for any necessary work required post-petition." In paragraph 14 of their affidavit, the Debtors state that they believe that BOC "adequately advised [them] as to their legal options as it relates to this Bankruptcy Petition, including all aspects of

-27-

payment of attorney fees." Neither the Debtors nor the UST allege that the Debtors were in any way coerced into signing the Post-Petition Agreement. The Debtors do not suggest in any way that BOC did not adequately explain to them BOC's limitation on the scope of its representation or the legal matter in question. In fact, the Debtors' affidavit contains a number of statements affirmatively expressing their satisfaction with BOC's representation. For example, in paragraph 11 of their affidavit, the Debtors state that BOC has represented them in a "prompt and professional manner;" and in paragraph 14, that BOC "has represented them competently and professionally."

The Pre-Petition Agreement and the Debtors' affidavit unequivocally show that the Debtors believe that BOC adequately informed them about the limitations on BOC's representation of them pre-petition and the unbundling of BOC's legal services between pre-petition services and post-petition services. They also show that the Debtors believe that BOC adequately informed them about the technical aspects of a Chapter 7 case, and the legal ramifications, material risks and available alternatives once the petition was filed and BOC's representation ended under the Pre-Petition Agreement. But the standard under the MRPC is not whether the clients *believe* that their attorney provided adequate consultation, but whether the attorney *in fact* adequately advised the clients concerning these matters. The evidence in the record regarding the Debtors' satisfaction with BOC is important, but it is not, by itself, sufficient to enable the Court to make a finding one way or the other about whether BOC met this standard. That is not to say that BOC failed to provide adequate consultation to the Debtors, but only that it is impossible on this record to ascertain whether its consultation was adequate.

Informed consent

The absence of evidence on the adequacy of BOC's consultation with the Debtors is important for another reason too. Without knowing what was explained by BOC to the Debtors, it

is equally impossible to ascertain whether the Debtors' consent to the unbundling of legal services, and to BOC's limitation on its pre-petition services, was a fully informed consent. In paragraph 8 of their affidavit, the Debtors state that "although they were in no way obligated to do so, Debtors knowingly and voluntarily decided to retain B.O.C. . . . to perform all necessary post-petition services on behalf of the Debtors." In paragraph 9 of their affidavit, the Debtors state that they "knowingly and voluntarily executed" the Post-Petition Agreement. Finally, in paragraph 13 of their affidavit, the Debtors state that they "wish to continue paying B.O.C." the balance due and owing under the Post-Petition Agreement in the amount of $1,333.32 as of the date of their affidavit. These statements all strongly evidence the Debtors' consent to BOC's unbundling of legal services between pre-petition and post-petition. That much is clear. But what is not clear from this record is whether that consent was a fully informed consent after BOC provided adequate consultation to the Debtors. For instance, did BOC explain to the Debtors that if they did not file all of their required documents post-petition, such as schedules of assets and liabilities, statement of financial affairs and other documents, then they would not obtain a Chapter 7 discharge despite filing their bankruptcy petition, cover sheet, statement of social security number, and matrix? Did BOC explain the consequences of dismissal and serial filings on the automatic stay? Did BOC explain to the Debtors that a failure to attend the § 341 meeting would mean no discharge? Did BOC explain to the Debtors that failure to cooperate with the Chapter 7 trustee could provide a basis to object to their discharge? The record before the Court is insufficient to answer those questions.

The Court has already found that BOC did not violate its duty of competence under the MRPC by the act of unbundling or breaking out the legal services it would perform pre-petition from those that it would perform post-petition. But the record is insufficient for the Court to determine whether BOC provided adequate consultation to the Debtors. Although the Debtors state

unequivocally that they consented to the limitations on BOC's pre-petition legal services, and that they chose voluntarily to sign the Post-Petition Agreement to have BOC perform the necessary post-petition legal services to complete their Chapter 7 bankruptcy case, that is not enough under the MRPC. The MRPC require that for the Debtors' consent to be meaningful, it must be a fully informed consent. To enable the Court to determine whether BOC provided adequate consultation to the Debtors concerning BOC's limitation on its services pre-petition, and whether the Debtors' consent to such limitation was fully informed, for purposes of the UST's motion, the Court requires BOC to file an affidavit within ten days to address these two issues. The UST shall have ten days thereafter in which to file any objection or response to the affidavit. The Court will then enter an order regarding the UST's motion.

### Conclusion

The Court has a very strong preference to see individual debtors hire an attorney to represent them in all aspects of a Chapter 7 bankruptcy case, from start to finish, including the preparation and filing of the petition and all required documents together with all of the steps necessary to complete the case after the petition has been filed. In the Court's experience, an individual Chapter 7 debtor's chances of success are greatly enhanced if they have an attorney represent them throughout the entire process.[4] Further, it is beyond challenge that individual debtors are also invariably better served by having an attorney represent them in preparing as many as possible of their required

---

[4] Although an individual Chapter 7 debtor may represent himself or herself pro se, the likelihood of success for a debtor without an attorney decreases dramatically. During 2010 and 2011, only 1.2% and 1.4%, respectively, of all individual Chapter 7 cases filed by an attorney in the Bankruptcy Court for the Eastern District of Michigan were dismissed without a discharge, while 26.3% and 21.8%, respectively, of pro se individual Chapter 7 cases were dismissed without a discharge. During the same time period, 97.8% and 97.5%, respectively, of individual Chapter 7 cases filed by an attorney received a discharge, while only 67.8% and 75%, respectively, of pro se individual Chapter 7 cases received a discharge.

documents before their petition is filed and then filing those documents together with their petition. This practice lessens the chance of inconsistency or error, and minimizes the likelihood of problems for a debtor down the road. However, the Court understands that some individual debtors simply cannot afford to pay up front for all of the services required to both file and complete a Chapter 7 case prior to the time that they file their Chapter 7 bankruptcy case. The law does not prohibit such individuals from paying a smaller fee to an attorney to get their case filed and then, once the case is filed, either proceeding pro se or entering into a new agreement either with the same attorney or with another attorney to represent them in completion of their case, with the payment for any post-petition legal services to be paid out of such individual's future earnings.[5] As <u>Rittenhouse</u> makes clear, a pre-petition agreement to pay an attorney gives rise to a dischargeable debt. A post-petition agreement does not. 404 F.3d at 396-97. For the Court to insist on an all or nothing approach, in the name of promoting attorneys' competence, will have the perverse effect of depriving needy individual debtors who cannot afford to pay in advance for *all* of the legal services they may need in a Chapter 7 case, from hiring an attorney to provide them with *any* of the legal services that they may need in a Chapter 7 case. Just because those individuals cannot afford to pay for all of an attorney's fee in advance should not mean that such individuals can only avail themselves of bankruptcy relief by filing either pro se or with the help of a bankruptcy petition preparer.

---

[5] Of course, in the Eastern District of Michigan, when an attorney files a petition for an individual debtor, that attorney becomes the debtor's counsel of record pursuant to Local Bankruptcy Rule (E.D.M.) 9010-1(a) and (b). If an individual debtor does not pay in full the fee for all of the attorney's legal services before the petition is filed, and instead pays a smaller fee just to have the attorney get the case filed, with the intention of deciding post-petition whether or not to hire such attorney to complete the case under a separate post-petition agreement, the attorney who filed the case is still the counsel of record, with all of the responsibilities that are imposed upon the debtor's counsel of record, unless the attorney obtains permission of the court to withdraw as counsel of record pursuant to Local Bankruptcy Rule (E.D.M.) 9010-1(g).

As long as a Chapter 7 debtor's attorney competently performs those services that the debtor has hired the attorney to perform, provides an adequate consultation to the debtor concerning any limitations placed upon the services to be rendered in connection with the filing of a case, and obtains such individual's fully informed consent to such limitations, the attorney may unbundle the pre-petition services from the post-petition services by entering into a separate pre-petition agreement describing the services to be rendered and the fee to be paid prior to filing bankruptcy, and a separate post-petition agreement describing the services to be rendered and the fee to be paid post-petition. Stated another way, the Court holds that if the attorney's legal services for an individual debtor are unbundled between pre-petition services and post-petition services, in strict conformance with the MRPC, such unbundling of legal services does not by itself warrant any relief under § 329 of the Bankruptcy Code.

In this case, the Court will enter an order on the UST's motion, consistent with this opinion, after the Court reviews the affidavit that BOC is required to file and any objections to it that the UST may file.

.

Signed on November 01, 2012

                                    /s/ Phillip J. Shefferly
                              Phillip J. Shefferly
                              United States Bankruptcy Judge